UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
ELIZABETH FAUGHNAN,

                Plaintiff,

    - against -                              **MEMORANDUM & ORDER**

NASSAU HEALTH CARE CORPORATION,           2:19-cv-03171 (RJD)(RLM)

                Defendant.
------------------------------------------------------------ x

DEARIE, District Judge.

      Plaintiff Elizabeth Faughnan brings an employment discrimination action seeking declaratory judgment and damages for alleged violations of the Age Discrimination in Employment Act ("ADEA"), the Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964 ("Title VII") and New York state law analogs (the New York State Human Rights Law ("NYSHRL") and the New York Equal Pay Law ("NY EPL")). Ms. Faughnan, a 51-year-old lawyer, claims her former employer, Defendant Nassau Health Care Corporation ("NHCC"), discriminated against her on the basis of her gender and age and subjected her to a hostile work environment throughout her employment, culminating in her termination on February 20, 2018.

      Defendant moves to dismiss plaintiff's claims as time-barred and for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, defendant's motion is granted and plaintiff's complaint is dismissed in its entirety.

## BACKGROUND

      For purposes of defendant's motion, the Court accepts as true the following allegations. Plaintiff is a 51-year-old Caucasian female lawyer, who resides in Nassau County, New York.

Am. Compl. ¶¶ 9, 21.  At all relevant times, she was an employee of NHCC, also known as NuHealth System, which "operates as a healthcare organization that provides essential medical care, disease, and lifestyle management services."  Id. at ¶¶ 10-12.  Plaintiff was hired by NHCC in 2013 as Deputy Executive Director in the Office of Legal Affairs with a yearly salary of $160,000.  Id. at ¶ 14.  In or around March 21, 2014, she was appointed Assistant NHCC Counsel at the same salary.  Id. at ¶ 26.

From the time Ms. Faughnan began at NHCC until November 2015, John Ciotti served as General Counsel of NHCC.  Id. at ¶ 46.  From November 2015 until July 2016, Thomas Alfano and Robert Tepper "effectively ran and managed the Legal Department" while Mr. Ciotti was on leave.  Id. at ¶¶ 46-47.  From July 2016 until January 2017, Mr. Ciotti resumed his role as General Counsel.  Id. at ¶ 46.  From January 2017 through that spring, Mr. Tepper managed the department, following Mr. Ciotti's death.  Id. at ¶ 58.  At the time of plaintiff's termination from NHCC in February 2018, Megan Ryan served as General Counsel.  Id. at ¶ 62.

Ms. Faughnan alleges NHCC "treated [her] poorly because of her age and gender."  Id. at ¶ 99.  She complains that when she was hired, Mr. Ciotti informed her she was not permitted to maintain her outside legal practice while a named male employee was.  Id. at ¶¶ 16-18.  She then claims that a year later, in 2014, Mr. Ciotti asked her to resign from her position as Deputy Executive Director (and be reappointed to a different position) so that NHCC could appoint another named male to her former position.  Id. at ¶¶ 23-26, 32.  She also complains that Mr. Ciotti would require another employee to be present when talking with her behind closed doors "because he was scared of being accused of any sort of harassment," id. at ¶¶ 28-29, 31, and at times "yell[ed] at her in front of her colleagues when he became apprised of anything displeasing."  Id. at ¶ 30.  She complains that Thomas Alfano referred to the office as the Men's

2

Club or the "Diamond Club," which, according to plaintiff, is the name of a New York City gentleman's club, id. at ¶ 48, and that on one occasion he allowed a male employee to remain for a conference call after a meeting, but required Ms. Faughnan to leave. Id. at ¶ 50. Plaintiff also complains that when she was terminated in February 2018, NHCC did not allow her to review or edit her severance letter, id. at ¶¶ 83-84, 86-87, 92-93, and did not grant her a "length of service adjustment" to reflect her prior service for the county in her "longevity payment," although such a benefit was conferred upon certain male employees. Id. at ¶¶ 76-80, 110-11.

Plaintiff claims she was treated poorly because of her age when NHCC terminated her and, ten months later, replaced her with a 28-year-old female lawyer, Danielle del Grosso. Ms. del Grosso was hired in December 2018, pending her admission to the bar, as Assistant NHCC counsel at a salary of $74,500. Id. at ¶¶ 99-102.

Finally, plaintiff alleges generally that she was required "to perform the same or substantially the same job position as male employees, requiring equal skill, effort, and responsibility under similar working conditions" at NHCC, but was paid at a rate less than male employees. Id. at ¶ 113.

On December 17, 2018, plaintiff filed a charge against NHCC with the Equal Employment Opportunity Commission ("EEOC"). Id. at ¶ 5. On February 28, 2019, the EEOC issued a notice of right to sue. Id. at ¶ 6. Plaintiff filed this suit on May 28, 2019. Complaint, ECF No. 1.

## DISCUSSION

I.  Statute of Limitations

Under Title VII and the ADEA, a complainant must first file a charge of discrimination with the appropriate agency before filing a lawsuit in federal court. Once the agency issues a

3

notice of right to sue, a complainant has 90 days to file her lawsuit.  The claims are subject to a 300-day statute of limitations that runs from the date the charge is filed with the agency: discriminatory conduct occurring within 300 days prior to the filing of the charge is timely; conduct occurring before the 300 days is not.  Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).

Defendant challenges as untimely some of the alleged incidents of discrimination and urges the Court to confine its review of the amended complaint to incidents occurring on or after February 20, 2018, three hundred days before plaintiff filed her EEOC charge.  Plaintiff counters in the amended complaint by citing the "continuing violation doctrine," a recognized exception that "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations."  Quinn, 159 F.3d at 765.

On a motion to dismiss, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy."  Harris v. City of New York, 186 F.3d 243, 249–50 (2d Cir. 1999).  Plaintiff asserts only three timely discriminatory incidents:  (1) she was terminated and replaced ten months later with a younger person; (2)  she was not permitted to edit her severance letter while certain male employees were permitted to do so; and (3) she was not credited for her length of service to the county while a named male employee was credited for his service upon his termination.  To connect these allegations to the incidents occurring prior to February 20, 2018, plaintiff merely alleges NHCC "engaged in a pattern and practice of age discrimination" and urges that the continuing violation exception applies.

The amended complaint does not adequately plead a continuing violation.  Plaintiff's

4

timely allegation that she was terminated because of her age cannot form the basis of a continuing violation because the amended complaint does not allege another incident involving age, timely or otherwise.  Thus, it cannot be said that she successfully alleged "an ongoing policy" of age discrimination.  Nor has plaintiff alleged such a policy of gender discrimination.  Plaintiff does not allege that she was terminated because of her gender; she alleges she was not permitted to edit her severance letter and that she was not given certain credits in her severance payment.  But those alleged incidents largely occurred between plaintiff and Human Resources employee, Maureen Roarty.  Other than plaintiff's label of discriminatory, those incidents have no apparent relationship to the untimely alleged incidents, such as that former General Counsel John Ciotti yelled at plaintiff, required another employee to be present when he spoke with her and did not allow her to maintain an outside legal practice.  Indeed, Mr. Ciotti died a year prior to plaintiff's termination and her related conversations with Ms. Roarty.  Nor do the timely alleged incidents bear a relationship to plaintiff's allegations that Mr. Alfano, another in-house lawyer who resigned more than a year before plaintiff was terminated, referred to the legal department as the "Men's Club" or that he excluded her from one specific meeting.

      Conclusory allegations do not suffice; the day is long gone when a pleading mantra alone will entitle a plaintiff to launch expensive and time-consuming discovery and almost inevitable motion practice focusing on the adequacy of the proof.  Isolated events over a five-year period, even coupled with dated events that would not be subject to judicial review, do not, without some factual support, nudge the pleading across the line to plausible merely because plaintiff characterizes them as discriminatory.

      As a result, allegations of discriminatory conduct pre-dating February 20, 2018 with respect to Ms. Faughnan's ADEA or Title VII claims are time-barred.  Because February 20,

5

2018 is also the date of Ms. Faughnan's termination from NHCC, the only incidents that are not time-barred and on which plaintiff might proceed are those involving severance and NHCC's subsequent hiring of a younger employee.

II.     Failure To State a Claim

   A. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Facial plausibility exists where plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. And the Court need not "accept as true a legal conclusion couched as a factual allegation." Id.

In the context of a workplace discrimination complaint, the Second Circuit has held that "while a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, . . . it must at a minimum assert nonconclusory factual matter sufficient to 'nudge[ ] [its] claims . . . across the line from conceivable to plausible' to proceed." E.E.O.C. v. Port Auth. of New York & New Jersey, 768 F.3d 247 (2d Cir. 2014) (citations omitted).

As discussed below, plaintiff has failed to state a claim under Title VII or NYSHRL for either gender discrimination or hostile work environment, age discrimination under the ADEA, or unequal pay on the basis of gender in violation of the EPA or NY EPL.

   B. ADEA

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment

6

discrimination complaint under the ADEA must plausibly allege that adverse action was taken against her by her employer, [ ] that her age was the 'but-for' cause of the adverse action[,]" and a plaintiff "must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" Marcus v. Leviton Mfg. Co., Inc., 661 F. App'x 29, 31–32 (2d Cir. 2016) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84, 87 (2d Cir. 2015)). An employee suffers an adverse employment action where the employer's conduct causes a "materially adverse change in the [plaintiff's] terms and conditions of employment." Vega, 801 F.3d at 85. "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id.

As a whole, plaintiff's amended complaint hardly paints a picture of age discrimination. Plaintiff claims she was hired by the company when she was 43 or 44. See Am. Compl. ¶¶ 9, 14. She concedes that, when she was hired, the legal department included several other over-40 employees, such as Secretary, Linda (age 50), General Counsel, John Ciotti (age 59), Attorney, Carolyn Olsen (age 60), Attorney, Robert Tepper (age 40) and Attorney, Corinne Imbert (age 40). Id. at ¶¶ 36-40. Indeed, shortly after she was hired, she alleges NHCC also hired a 70-year-old attorney, Gerald Wright, to a position bearing plaintiff's same title. Id. at ¶ 41. Plaintiff also concedes that other older (and younger) employees were terminated around the same time as she. See, e.g., id. at ¶¶ 18, 68, 89 (Wright (70) terminated on same date; DiSanti (60) terminated 6 days prior; Zeni (35) terminated same month).

Still, plaintiff complains her age was to blame for her termination from NHCC, suggested

7

only by the subsequent hiring of a young law graduate.[1] To survive dismissal, plaintiff must be a member of the protected class, her termination must constitute an adverse employment action, the adverse action must be plausibly supported by facts that age was the but-for cause of her termination. Johnson v. Andy Frain Srvcs., Inc., 638 F. App'x 68, 70 (2d Cir. 2016).

Plaintiff has plausibly alleged she suffered an adverse employment action because she was terminated from her position, undoubtedly a "materially adverse change in the terms and conditions of [her] employment." Vega, 801 F.3d at 85 (citations omitted). But she has failed to plausibly allege discriminatory motive. "Without more, the mere fact that an older employee was replaced by a younger one" is not enough to survive dismissal. Marcus v. Leviton Manuf. Co., Inc., 661 F. App'x 29, 32–33 (2d Cir. 2016) (summary order). Here, plaintiff has done just that. She acknowledges that she and others were terminated because positions were being eliminated, but that NHCC hired a younger person ten months later. Am. Compl. ¶¶ 99-102. While plaintiff alleges Ms. del Grosso, the new hire, was hired as an Assistant NHCC Counsel, she does not allege any facts about Ms. del Grosso's responsibilities or her own. Without such support, the Court is unable to assess whether their shared generic title means plaintiff and Ms. del Grosso were "similarly situated," such that their disparate treatment could be attributed to differences in age. See Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015); see also Adams v. N.Y. State Educ. Dep't, 752 F. Supp. 2d 420, 465-66 (S.D.N.Y. 2010) (dismissing ADEA claim after noting that plaintiffs "merely allege[d] that [they were] over 40 years of age and were replaced by younger teachers" and that such allegations lacked "facts from which age discrimination [could] be inferred"). For instance, plaintiff alleges Mr. Wright, a 70-year old

---

[1] The other two timely alleged incidents relate to gender discrimination—plaintiff alleges she was not permitted to review or edit her severance letter while male employees were allowed to do so, and she alleges she did not receive certain time credits at the time of her termination, unlike at least one male employee.

attorney, was also an Assistant NHCC Counsel. It strains credulity that Mr. Wright, Ms. Faughnan and Ms. del Grosso, a recent law school graduate who had not yet been admitted to the bar, had the same responsibilities. Indeed, their salaries imply otherwise. Mr. Wright was paid $175,000 per year, plaintiff $160,000 and Ms. del Grosso was to be paid $74,500. Am. Compl. ¶¶ 41, 96, 98. Further, plaintiff also fails to allege that anyone at NHCC ever made a remark about her age, or anyone else's, when she was employed or at the time of her termination. Nor does she allege that the reason given for her termination was pretext to cover up a discriminatory motive. Stepping back from this picture, the snapshot fails to even suggest that age was a factor in NHCC's employment decisions. Without more, these allegations do not state an age discrimination claim.

Defendant's motion to dismiss plaintiff's ADEA claim is granted.

**C. Title VII and NYSHRL**

*1. Gender discrimination*

To survive dismissal of Title VII claims, a plaintiff need not plead a prima facie case of employment discrimination. Similar to federal age claims, a plaintiff need only allege facts that "plausibly support that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action[;] and [minimally] support [sic] . . . the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311 (emphasis omitted). Similarly, the NYSHRL states that it is "an unlawful discriminatory practice" for an employer, based on an individual's gender or sex, "to discharge from employment ... or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Because claims under both Title VII and the NYSHRL are treated as identical, I will address them together. Soloviev v. Goldstein, 104 F. Supp. 3d 232, 246

9

(E.D.N.Y. 2015).

Defendant argues plaintiff's gender discrimination claims fail because she does not plausibly allege she was subject to an adverse employment action because of her gender. Plaintiff retorts the claims survive because she was not permitted to make changes to her severance letter while male colleagues were, and because at her job interview she was told she could not maintain her small, outside legal practice while a male employee was permitted to do so. She also says she alleged an inference of gender discrimination arising from several comments that Messrs. Alfano and Tepper made to her, including referring to the office as a gentleman's club and asking her to leave a meeting when a male was permitted to stay.[2]

Plaintiff alleges she was "offered a 'take it or leave it' severance letter and two month's salary" while Messrs. Wright and Zeni were permitted to propose changes to their letters. Am. Compl. ¶¶ 86, 89; 90-93. Curiously plaintiff says nothing in her lengthy complaint about how the severance letter was wrong or unfair, or how she would have sought to revise it if given the opportunity. Instead, she concedes Mr. Wright received a two months' severance payment, just like she did. Nor does plaintiff cite any legal basis to support the conclusion that the lack of opportunity to edit one's severance letter is, in and of itself, an adverse employment action. Without allegations to support that the male employees' edits facilitated some gain or advantage to them that was denied to her, or precedent showing that the ability to propose changes alone is material, I cannot conclude that this incident is enough to survive dismissal.

Plaintiff's allegation that at the time of her termination NHCC did not credit her prior

---

[2] As discussed in Part I, supra, plaintiff's allegations surrounding her termination and severance are timely, but the alleged comments about an outside legal practice, those made by Messrs. Alfano and Tepper and the incident involving the meeting are not. That said, for the reasons discussed herein, even crediting plaintiff's gender allegations and considering those that are timely and untimely, plaintiff fails to state a claim for relief under Title VII.

10

service for the county when calculating her severance payment is also insufficient to support a gender discrimination claim under Title VII or NYSHRL. Plaintiff alleges that NHCC was supposed to credit her for time she served as Councilwoman for the Town of Oyster Bay when she was terminated. Id. at ¶¶ 103-10. Significantly, plaintiff complains that this failure resulted in her paying a higher health insurance premium while employed by NHCC and a lower severance payment because she was not paid out for 100% of her sick days as an employee with 10 or more years of services is entitled. Id. at ¶¶ 105-06, 108. While plaintiff alleges that NHCC's actions in this regard negatively impacted her, she does not plausibly allege that the conduct was motivated by gender. The amended complaint only claims that "[u]pon information and belief" Mr. Ciotti's prior county service "was accepted in full" when he retired several years prior. Id. at ¶ 111. Without more, this does not nudge plaintiff's claim from conceivable to plausible gender discrimination.

The amended complaint gives the impression of a workplace in which gender is not a factor in employment decisions, evidenced by allegations that at the time of her termination, NHCC's General Counsel and the Executive Vice President of Human Resources were women; plaintiff refers to three other female attorneys who worked in the NHCC legal department at the same time as she did; and she alleges she was ultimately "replaced" by a woman following her termination. Thus, without additional allegations to support that the severance letter issue somehow stemmed from her gender, I cannot conclude that plaintiff's claim that one male employee might have received a service credit years prior is enough to state a claim. Plaintiff's catalogue of office slights over her five-year period of employment which she then simply assigns to factors of age and gender does not carry the day.

Accordingly, plaintiff's gender discrimination claims under Title VII and NYSHRL are

11

dismissed.

### 2. Hostile work environment

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (citation omitted). A hostile work environment claim should be assessed based on the "totality of the circumstances" and factors a court might consider include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Id. To avoid dismissal, a plaintiff "need only plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." Id. Because hostile work environment claims under the NYSHRL are treated the same as such claims under federal law, I consider them together. See, e.g., Murdaugh v. City of New York, 2011 WL 798844, at *5 (S.D.N.Y. 2011); Ochei v. The Mary Manning Walsh Nursing Home Co., 2011 WL 744738, at *4 (S.D.N.Y. Mar. 1, 2011).

Defendant argues plaintiff's gender-based hostile work environment claim must fail because it is based on the summary assertion that NHCC "created and condoned a hostile work environment against Plaintiff by humiliating and embarrassing her." Plaintiff argues her claim survives given her allegations that "during Mr. Ciotti's absence, Mr. Alfano and Mr. Tepper effectively ran and managed the Legal Department on a daily basis. . . Mr. Alfano

12

would refer to the General Counsel's Office as the 'Diamond Club' (which is the name of a gentlemen's club in New York City) and as the 'Men's Club' . . . Mr. Alfano ended a staff meeting by saying the staff can leave, because 'the attorneys have to make a conference call' . . . However, when Plaintiff would remain, Alfano stated: 'Not you, Beth.' . . . However a white male clerk, Lou T., was allowed to remain in the room." ECF No. 26 at 24.  She says that these allegations, taken as true, create an environment that a reasonable female would find hostile or abusive.  Id.

While the Circuit cautions against setting the bar "too high" in the context of a hostile work environment claim, these allegations do not support the conclusion that plaintiff was faced with harassment based on her gender.  Cf. Merhige-Murphy v. Vicon Indus., Inc., No. 07-cv-1526 (SJF) (ARL), 2008 WL 111163, at *3 (E.D.N.Y. Jan. 7, 2008) ("Mere utterance of an . . . epithet which engenders offensive feelings in an employee would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII" (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  One conference call and isolated references to the department as a gentlemen's club—all of which involved a single male employee—do not make out a claim of plausible hostile work environment.

Plaintiff's gender-based hostile work environment claim is dismissed.

**D. Equal Pay**

The Equal Pay Act prohibits employers from discriminating "between employees on the basis of sex" by paying different wages for "equal work on jobs the performance of which requires equal skill, effort, and responsibility." 29 U.S.C. § 206(d)(1).  It is a strict liability statute and so a plaintiff need not prove discriminatory intent.  Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999).  Instead, at the pleading stage, a plaintiff only need allege facts that

13

plausibly show (1) "the employer pays different wages to employees of the opposite sex"; (2) "the employees perform equal work on jobs requiring equal skill, effort, and responsibility"; and (3) "the jobs are performed under similar working conditions." E.E.O.C. v. Port Auth. of New York & New Jersey, 768 F.3d 247, 254–55 (2d Cir. 2014) (citations omitted). However, to avoid dismissal, plaintiff's complaint "must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job *content* was 'substantially equal.'" Id. at 256 (quoting Iqbal, 556 U.S. at 678) (emphasis in original). The Second Circuit has held EPA claims must be dismissed where the complaint "stat[es] nothing about the actual content of the work done by the dozens of attorneys either within or across practice areas at the [company]," but instead "allege[s], in conclusory fashion that, 'all of the non-supervisory attorney jobs in [the company's] law department are substantially equivalent and require the same, skill, effort, and responsibility.'" Id. at 251. Claims for NY EPL violations may be evaluated under the same standard as federal violations and so I consider both plaintiff's federal and state equal pay claims together. Rose v. Goldman, Sachs & Co., 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001).

      Plaintiff concedes she must allege a valid comparator employee to survive defendant's motion, but argues she has done so by alleging Gerald Wright, Robert Tepper, Eric Zeni and Thomas Alfano performed equal work for more pay. She argues that whether or not their jobs were in fact "substantially equal" is a question for the jury and so defendant's motion must be denied. However, the law is clear that a district court has the authority to dismiss an EPA claim based on the pleadings where a complaint lacks specific facts sufficient to identify a valid comparator. See, e.g., Werst v. Sarar USA Inc., No. 17-cv-2181 (VSB), 2018 WL 1399343, at *8 (S.D.N.Y. Mar. 16, 2018); E.E.O.C. v. Port Auth. of New York & New Jersey, No. 10-cv-

14

7462 (NRB), 2012 WL 1758128, at *3 (S.D.N.Y. May 17, 2012), aff'd, 768 F.3d 247 (2d Cir. 2014); Rose, 163 F. Supp. 2d at 244.

Resolution of defendant's motion accordingly requires a review of plaintiff's allegations concerning her own role and pay and those of the employees she identifies as comparators to support her equal pay claims. From 2013 to 2014, plaintiff served as Deputy Executive Director, and from 2014 until the time of her termination in 2018, she served as Assistant NHCC Counsel. In both roles she was paid $160,000 per year. Am. Compl. ¶¶ 14, 26. Plaintiff identifies four comparator employees, whose names, positions and salaries, as alleged in the complaint, as provided below.

| Employee | Position | Salary |
|---|---|---|
| Thomas Alfano | Attorney | $199,000 |
| Eric Zeni | Attorney Employee Relations | $199,000 |
| Robert Tepper | Attorney II | $188,000 |
| Gerald Wright | Assistant NHCC Counsel | $175,000 |

Three of the four comparators held different positions than plaintiff: Mr. Alfano, "new Attorney" (¶ 44), Mr. Zeni, "Attorney Employee Relations" (¶¶ 67, 89), and Mr. Tepper, "Attorney II" (¶¶ 39, 43, 45). While differences in formal titles are not fatal, plaintiff must, at a minimum, sufficiently allege that she held a "substantially equal" position to the comparators in order to survive dismissal. She does not do so. She alleges generally that "the attorneys whom [sic] worked in the Office of Legal Affairs shared the same skill, tasks, qualities and responsibilities expected of an attorney registered in the State of New York," am. compl. ¶ 27, but the Second Circuit has expressly rejected allegations that "an attorney is an attorney is an attorney," and makes clear the types of facts alleged here are insufficient to show the jobs were "substantially equal" to move beyond the pleading stage. Port Auth. of N.Y. & N.J., 768 F.3d at

15

249 (affirming dismissal of complaint alleging that "the attorneys all have 'the same professional degree,' work 'under time pressures and deadlines,' and utilize both 'analytical' and 'legal' skills" because such allegations "are generalizable to virtually all practicing attorneys"); see also Eng v. City of New York, 715 F. App'x 49, 52 (2d Cir. 2017) (affirming dismissal of equal pay claims for failure to provide factual allegations about comparator's job "duties, skills, efforts or responsibilities" beyond "generic" description of the job); Solomon v. Fordham Univ., 2020 WL 1272617, at *13 (S.D.N.Y. Mar. 17, 2020) (dismissing equal pay claims where plaintiff alleged she and other professors "perform the same Professor job"); Werst, 2018 WL 1399343, at *8-*9 (dismissing complaint setting forth similarly "formulaic recitation of the language of the Equal Pay Act"); Suzuki v. SUNY College at Old Westbury, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013) (dismissing equal pay claims alleging plaintiff, a female professor, was paid less wages than those "paid to male employees although she performed equal, or superior, work and had equal or better qualifications and experience" because it contained "no factual allegations about plaintiff's or her comparator's positions"); Rose, 163 F. Supp. 2d at 242, 244 (dismissing equal pay claims where plaintiff's complaint "do[es] nothing more than [] paraphrase relevant legal standards" and contains "nothing more than bald assertions that she and male employees . . . received disparate wages for substantially equal jobs under similar working conditions").

Plaintiff's arguments that the decisions in Lenzi and Crawford require a different result are not compelling. In Lenzi, Judge Feuerstein allowed plaintiff's equal pay claims to proceed because she found that plaintiff pleaded "numerous similarities between her job content" and those of five comparator employees, including a description of each person's duties and responsibilities, their degrees and qualifications, and management and supervisory assignments. Lenzi v. Systemax, Inc., 2015 WL 6507842, at *1-*2 (E.D.N.Y. Oct. 26, 2015). No such

allegations are pleaded here. On the contrary, plaintiff merely alleges the titles and salaries of Messrs. Alfano, Zeni and Tepper and says they, like all attorneys at the company, did the same work, without an explanation of what that work entails. Crawford is even less helpful to plaintiff. There, the court allowed plaintiff's equal pay claims to proceed to trial, despite defendant's motion for summary judgment, and did not address whether the claims were adequately pleaded on the four corners of plaintiff's complaint, the inquiry here. Crawford v. ExlService.com, LLC, 16-cv-9137 (LAP), 2019 WL 5887214 (S.D.N.Y. Nov. 12, 2019). That decision does not undermine a district court's clear authority to dismiss an action at the pleading stage where the allegations do not pass muster. See Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007-08 (2d Cir. 1991).

Finally, plaintiff alleges Mr. Wright was paid more than she, in violation of the equal pay laws. Unlike the other three employees, Mr. Wright is alleged to have held the same title as plaintiff, Assistant NHCC Counsel, but earned $15,000 more per year than plaintiff. Those allegations are also insufficient to support plaintiff's equal pay claims. Although plaintiff alleges she and Wright held the same position, in name, and were paid different amounts, alleging an overlap in title, alone, is not enough to satisfy the "exacting" standard. See Port Auth. of New York & New Jersey, 2012 WL 1758128, at *3 ("superficial comparisons based on job title or code are insufficient").

Plaintiff's equal pay claims are dismissed.

## **CONCLUSION**

The court fully appreciates that victims of workplace discrimination are not often able to identify incidents, comments or circumstances that would, if proven, evidence unlawful discrimination. More often proof, at times convincing proof, comes as the product of inference,

nuance and context supported initially by a pleading of sufficient relevant detail that provides a strong suggestion of discriminatory motive. It is not often easy sailing for an employee to advance the litigation in the face of challenges to the pleading and challenges to the proof. Reviewing courts must be acutely sensitive to the fact that meritorious cases rarely arrive wrapped in a compelling evidentiary package.

That said, the Court also recognizes that workplaces can be stressful environments where disappointments and complaints are not uncommon as employees pursue their careers and ambitions often checked by unfair treatment, favoritism and personal rancor, or legitimate business needs. But a catalogue of employee beefs, legitimate or otherwise, does not become actionable merely by labeling them discrimination. There must be more, not much, but more, some facts that breathe possible life into these otherwise generic complaints.

Thus, after accepting every allegation in Ms. Faughnan's complaint and drawing every inference in her favor, I find that her complaint must be dismissed for failure to state a claim under Rule 12(b)(6). Defendant's motion is GRANTED.

SO ORDERED.

Dated: March 18, 2021  
Brooklyn, NY

/s/ Raymond J. Dearie  
RAYMOND J. DEARIE  
United States District Judge